# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **JOSE R. VASQUEZ**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-3412-L** |
| | § | |
| **JEH JOHNSON, Secretary,** | § | |
| **DEPARTMENT OF HOMELAND** | § | |
| **SECURITY,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment (Doc. 28), filed February 3, 2014. After careful consideration of the motion, response, reply, record, and applicable law, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment.

## I.      Procedural and Factual Background

Jose R. Vasquez ("Plaintiff" or "Vasquez") filed this action against Jeh Johnson ("Defendant" or "Johnson"), Secretary of the Department of Homeland Security, on December 8, 2011. Plaintiff then filed his Amended Complaint ("Complaint") on May 17, 2012, alleging: (1) race and national original discrimination pursuant to Title VII of the Civil Rights Act of 1964, and (2) hostile work environment. As a result of the alleged discrimination, Plaintiff seeks damages, equitable and injunctive relief, attorney's fees, court costs, and prejudgment and postjudgment interest.

Plaintiff filed a Equal Employment Opportunity ("EEO") complaint on December 16, 2008. An Equal Employment Opportunity Commission ("EEOC") Administrative Judge held a hearing on

December 10, 2009, and issued a decision on January 5, 2010.  The Department of Homeland Security then issued a final order adopting the Administrative Judge's finding that Plaintiff failed to prove that the Department subjected him to the alleged discrimination.  On March 31, 2010, Plaintiff filed an appeal from the Department's final order.  The EEOC then accepted the appeal and affirmed the Department's final order on September 8, 2011.  In its decision, the EEOC stated that Plaintiff had the right to file a civil action in the appropriate United States District Court within ninety calendar days.

Vasquez is a Hispanic male of Salvadoran descent and national origin.  He worked as an electrical engineer in the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Office of Asset Management in Dallas, Texas.  Plaintiff's immediate supervisor was William "Scott" Wood ("Wood"), the Field Office Branch Chief.  Plaintiff worked for Defendant for approximately six months.

Plaintiff contends that he suffered the following acts of discrimination: "disparaging remarks about his race and national origin, relentless badgering, harassment, and humiliation, over scrutinized performance, [a] negative performance evaluation, and reduction in job duties."  Pl.'s Am. Compl. 7.

Defendant counters that the court lacks jurisdiction to consider certain unexhausted claims; that Vasquez has not established a prima facie case for the remaining claims; that Vasquez's supervisors had legitimate, nondiscriminatory reasons for their actions; and that those reasons were not pretext for intentional discrimination.

**Memorandum Opinion and Order - Page 2**

## II.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Id.*  (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are

insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.  Undisputed Facts

The following material facts are undisputed:

1. Vasquez is a Hispanic male of Salvadoran descent and national origin.

2. Vasquez worked as an electrical engineer in the Department of Homeland Security, Immigration and Customs Enforcement, Office of Asset Management, in Dallas, Texas, for approximately six months.

3. Vasquez's immediate supervisor was William "Scott" Wood, the Field Office Branch Chief.

4. Michael Gibbs ("Gibbs") was Wood's first-level supervisor.

5. Patricia Wallis ("Wallis") was Gibbs's supervisor.

6. On June 24, 2008, Wood e-mailed Vasquez to ask a question about a project.

7. On June 26, 2008, Wood prohibited Vasquez from communicating directly with the Mission Support Manager.

8. Wood removed Plaintiff from the position of Team Lead of Region 7 ("team lead").

9. On August 13, 2008, Wood told Vasquez that he could not make an onsite visit to Houston.

10. On August 14, 2008, Vasquez fell and hurt his back.

11. On August 17, 2008, Wood denied Vasquez's request to work from home and ordered him to return his government-issued cell phone, air card, and laptop.

12. In September 2008, Vasquez resigned.

## IV.    Analysis

### A.    Race and National Origin Discrimination Claim

#### 1.    Exhaustion of Administrative Remedies

Johnson contends that the court lacks jurisdiction to consider Vasquez's discrimination claims that are related to (1) his removal as team lead and (2) his alleged performance appraisal. Defendant argues that Plaintiff failed to exhaust administrative remedies with respect to these issues, as he did not initiate contact with an Equal Employment Office ("EEO") counselor within 45 days from the date of the alleged discrimination.  Defendant contends that Vasquez did not contact an

EEO counselor until 75 days after his removal as team lead and 61 days after he allegedly received a performance evaluation.  Defendant acknowledges that while the removal as team lead and the alleged performance appraisal may not be reviewed as part of the discrimination claim, they can be used as background evidence in support of the hostile work environment claim.  In his response, Plaintiff does not contest that the removal and the alleged performance appraisal cannot be used in the court's analysis of his discrimination claim.  Plaintiff argues, however, that these two alleged acts should be reviewed as part of the court's analysis of the hostile work environment and constructive discharge claims.[1]

"As a federal employee, the Federal Regulations require [Plaintiff] to follow certain procedures before filing a Title VII suit.  The first step in filing an EEOC complaint is that an aggrieved employee must contact an agency EEO counselor within 45 days of the alleged discriminatory conduct requesting informal counseling." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citing 29 C.F.R. § 1614.105).  Plaintiff was removed from team lead on June 26, 2008, and he was issued an alleged performance evaluation on July 10, 2008.  Defendant contends that Vasquez did not contact an EEO counselor until 75 days after his removal as team lead and 61 days after he allegedly received a performance evaluation.  The court is only aware of the December 16, 2008 date, which is when Plaintiff filed his EEO complaint.  *See* Def.'s App. 230.  If this is the date when Plaintiff first contacted the EEO counselor, the days when he was removed from team lead and was issued an alleged performance evaluation clearly occurred more than 45 days before his date of contact.  Again, Plaintiff does not provide any evidence that would rebut the argument that the

---

[1] While Plaintiff does not use the term "constructive discharge" in his Complaint, the court notes that a constructive discharge was implied in his discussion regarding a hostile work environment, and it will accordingly address the constructive discharge claim in that context.

**Memorandum Opinion and Order - Page 6**

court does not have jurisdiction over these two claims.  Instead, when responding to Defendant's contention about the court's jurisdiction, Vasquez focuses on his hostile work environment and constructive discharge claims.  He also discusses the actions of the United States Supreme Court "[i]n allowing acts outside of the statute of limitations to be considered," thereby implying his admission that the two claims fall outside of the 45-day requirement.  *See* Pl.'s Resp. 13.  Plaintiff also states, "The acts at issue in this case, i.e., removing Mr. Vasquez'[s] Team Lead designation and issuing him a negative performance appraisal, are clearly related to the actions within the 45-day period that constituted the hostile work environment and led to constructive discharge." Pl.'s Resp. 13-14.

The court can reasonably infer that Plaintiff admits that the court does not have jurisdiction over these two incidents as they relate to Plaintiff's discrimination claims; however, both parties agree that these incidents can be considered by the court when reviewing Plaintiff's hostile work environment and constructive discharge claims.  The court therefore determines that it *does not* have jurisdiction to consider Plaintiff's discrimination claims related to his removal as team lead and his alleged performance appraisal.  The court also determines that it can consider his removal as team lead and his alleged performance appraisal when it reviews Plaintiff's hostile work environment and constructive discharge claims.  Furthermore, even assuming the court did have jurisdiction over the two discussed incidents, these claims fail because: (1) Plaintiff's alleged performance appraisal is not an adverse employment action, and therefore, he has not established a *prima facie* case as to this

claim[2]; and (2) Johnson has set forth legitimate, nondiscriminatory reasons for removing Plaintiff from team leader and Plaintiff fails to raise a genuine dispute of material fact regarding pretext.

> **2.     Standard Applicable to Title VII Claims Based on Circumstantial Evidence**

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973), applies to Title VII cases based on circumstantial evidence of discrimination. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). The court concludes that the *McDonnell Douglas* burden-shifting framework applies to Plaintiff's Title VII discrimination claims based on race and national origin because he relies on circumstantial evidence of discrimination. Under this framework, for his Title VII claims, Vasquez must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

In the context of establishing a *prima facie* case of discrimination, an adverse employment action means an "ultimate employment decision," such as "hiring, granting leave, discharging,

---

[2] Furthermore, even if the alleged performance appraisal was an adverse employment action, Defendant has articulated legitimate, nondiscriminatory reasons for the action, and Plaintiff has not provided sufficient evidence to create a genuine dispute of material fact as to pretext.

promoting, or compensating."[3]  *McCoy v. City of* Shreveport, 492 F.3d 551, 559 (5th Cir. 2007).

Title VII does not cover "every decision made by employers that arguably might have some

tangential effect upon those ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d

570, 575 (5th Cir. 2003) (quoting *Burger v. Central Apartment Mgmt.*, 168 F.3d 875, 878 (5th Cir.

1999)).  An employment action that "does not affect job duties, compensation, or benefits" is not an

adverse employment action.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004),

*abrogated in part on other grounds by Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53,

68 (2006).  Major changes in compensation, duties, and responsibilities constitute ultimate

employment actions.  *Pegram*, 361 F.3d at 282 n.8 (citing *Hunt v. Rapides Health Care Sys., LLC*,

277 F.3d 757, 770 (5th Cir. 2001)). Allegations of unpleasant work meetings, verbal reprimands,

improper work requests, and unfair treatment do not constitute actionable adverse employment

actions.  *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (citing *Breaux v. City of Garland*,

205 F.3d 150, 158 (5th Cir. 2000)).

    If Vasquez establishes a prima facie case, the burden shifts to Defendant to articulate a

legitimate, nondiscriminatory reason for the adverse employment action. *Vaughn v. Woodforest*

*Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.

2005).  Defendant's burden in this regard is one of production, not persuasion, and it "can involve

no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  If Defendant

---

[3] The Fifth Circuit's precedent recognizing only "ultimate employment decisions" as actionable adverse employment actions in the discrimination context was unaffected by the Supreme Court's ruling in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 61-65 (2006), which abrogated the "ultimate employment decision" standard in the *retaliation* context.  Thus, the "ultimate employment decision" standard remains controlling for Title VII and ADEA discrimination claims.  *McCoy v. City of Shreveport,* 492 F.3d 551, 560 (5th Cir. 2007).  The "ultimate employment decision" standard therefore controls Vasquez's discrimination claims under Title VII.  Plaintiff has not asserted a retaliation claim.

meets this burden, the case moves to the pretext stage "where the question for summary judgment is whether a rational fact finder could find that [Defendant] discriminated against [Vasquez] on the basis of [race or national origin]." *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 (5th Cir. 2001). At this stage, for his Title VII claims of national origin and race, Vasquez must "offer sufficient evidence to create a genuine [dispute] of material fact either (1) that [Defendant's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Defendant's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Vasquez's] protected characteristic (mixed-motives alternative)." *Vaughn*, 665 F.3d at 636 (citation omitted).[4]

Vasquez, as the plaintiff, "must rebut each nondiscriminatory reason articulated by [his] employer." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Vasquez may establish pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation and internal quotation omitted); *Laxton*, 333 F.3d at 578; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation."). In cases involving circumstantial evidence, a verbal remark or comment that exhibits discriminatory animus may be used to establish pretext or used as additional evidence of discrimination if it: (1) "demonstrate[s] discriminatory animus"; and (2) was "made by a person primarily responsible for the adverse

---

[4] *Vaughn* is a Title VII case involving race discrimination; however, the same standard also applies to Title VII cases involving discrimination based on national origin. *Alzuraqi v. Group 1 Automotive, Inc.*, 921 F. Supp. 2d 648, 664 n.6 (N.D. Tex. 2013). The court in *Vaughn* states that it applies the modified *McDonnell Douglas* approach in racial discrimination cases under Title VII, and the *McDonnell Douglas* approach applies to all characteristics covered under Title VII, including national origin.

employment action or by a person with influence or leverage over the formal decisionmaker." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012); *Laxton*, 333 F.3d at 583.

In Title VII cases, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 134-35, 148 ("Certainly there will be instances where, although the plaintiff has established a prima facie case and introduced sufficient evidence to reject the employer's explanation, no rational factfinder could conclude that discrimination had occurred."). On the other hand, in the context of an unlawful discrimination claim under Title VII, summary judgment is inappropriate if: "the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race or national origin] was a determinative factor in the actions of which plaintiff complains." *Pratt*, 247 F.3d at 606-07 (internal quotation marks omitted) (quoting *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 373 n.23 (5th Cir. 2001)). Thus, "[w]hether summary judgment is appropriate in any particular case depends on a variety of factors, including 'the strength of the prima facie case, the probative value of the proof that the employer's explanation

is false and any other evidence that supports the employer's case and that properly may be considered.'" *Pratt*, 247 F.3d at 606 (quoting *Reeves*, 530 U.S. at 148 ).

### a.     Prima Facie Case

To establish a prima facie case of discrimination, Vasquez must show that: (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class under nearly identical circumstances. *Lee*, 574 F.3d at 259.  Defendant does not dispute that Vasquez was a member of a protected class (Hispanic race and Salvadoran national origin) or that he was qualified for his position.[5]  Defendant disputes that Plaintiff was the subject of an adverse employment action and that he was treated less favorably because of his membership in the protected class than were other employees similarly situated who were not members of the protected class under nearly identical circumstances.

The court first notes its disappointment in the lack of precision and quality found in the parties' briefings.  The standards are inadequately set forth, and legal statements are made out of context.  The parties at times cite cases for broad propositions; however, they do not explain how each case applies to the facts of this case.  Key issues should be handled in pleadings and in the discovery process.  For example, Plaintiff knows that to establish a prima facie discrimination case, one of the elements required is proof of an adverse employment action.  The court is not sure what conduct Plaintiff considers to be an adverse employment action.  This should have been set out in

---

[5] Defendant argues, however, that Vasquez committed several errors that led to some concerns about his ability to perform his job effectively.

**Memorandum Opinion and Order - Page 12**

the pleadings.  Additionally, if Plaintiff failed to set it out in the pleadings, Defendant should have

sent out interrogatories to identify each adverse employment action.  Apparently, this was not done.

Had this been done, it would be clear to the court the conduct that Plaintiff considers to be adverse

employment actions, and the court could have addressed them directly without having to trudge

through an unnecessarily laborious and painstaking process.  *The parties are admonished that*

*briefing is to be informative so that it assists rather than impede the court.*

As stated, an adverse employment action in this context means an ultimate employment

decision, such as hiring, granting leave, discharging, promoting, or compensating.  The court has

previously explained that an employment action that does not affect job duties, compensation, or

benefits is not an adverse employment action.  Additionally, unpleasant work meetings, verbal

reprimands, improper work requests, and unfair treatment do not constitute actionable adverse

employment actions.  Therefore, the court determines that the following alleged acts clearly are not

adverse employment actions: (1) Wood questioning Plaintiff's job qualifications; (2) Wood allegedly

screaming at Plaintiff and threatening to fire him; (3) Wood calling Plaintiff a "wetback" or stating

that "Salvadorans are liars;" (4) any alleged criticism of Plaintiff's performance; (5) any e-mail that

Wood may have sent to Vasquez asking about the progress of projects; (6) any performance

evaluation of Plaintiff that Wood issued;[6] (7) any alleged act that caused Plaintiff to sit in a broken

---

[6] The Fifth Circuit has stated that when there is no evidence connecting a performance evaluation to a loss of compensation, duties, or benefits, no adverse employment action exists.  *See Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009).  Vasquez has not provided the court with any evidence connecting the alleged negative performance evaluation to any loss of compensation, duties, or benefits.  Moreover, even assuming that a negative performance evaluation is an adverse employment action, Defendant has articulated a legitimate, nondiscriminatory reason for the alleged act.  Defendant contends that the only document in the record resembling a performance evaluation contains no negative statements but only performance goals. Def.'s App. 166.  Defendant explains that Wood asked Vasquez to complete a mid-year performance plan that listed his goals; however, because Vasquez had difficulty completing the form, Wood wrote a few examples on the plan, noting areas where he could improve.  In response, Vasquez cites to Wallis's deposition where she states that he received a "write-up" and a "written counseling," which Wallis deems to be a "disciplinary measure."  *See* Pl.'s App. 113-14.  Wallis, however, was discussing Defendant's formal

chair, fall, and hurt his back; (8) any denial of Plaintiff's request to receive an ergonomic chair; and (9) any alleged denial to act on Plaintiff's request for an Office of Workers' Compensation Program ("OWCP") form CA-1.[7]

The tenth and eleventh acts that the court determines are not adverse employment actions are slightly more complicated. Plaintiff contends that (10) Wood made false statements to OWCP to deny Vasquez's claim and (11) that Wood prohibited Vasquez from going to the Emergency Room while he was at work, refused to adjust his work schedule so that he could seek medical attention, and forced him to go on unpaid leave while he sought treatment. Plaintiff hurt his back on August 14, 2008. He contended that Wood caused this damage to his back. Plaintiff went to work on August 15, 2008. On August 16, 2008, doctors from Christus St. John Hospital stated that "[n]o specific evidence for acute bone injury [was] seen" but also stated that Plaintiff should not return to work until he was rechecked. Def.'s App. 208. On August 18, 2008, Dr. Di Van Le determined that Vasquez could return to work on August 25, 2008, with certain conditions. *Id*. at 209. Plaintiff contends that "[t]he record shows quite clearly that Mr. Wood tried to defeat Mr. Vasquez'[s] claim for workers' compensation arising out of this injury while, in his usual fashion, showing little regard for the truth." Pl.'s Resp. 15. Plaintiff states that "Mr. Wood reported that Mr. Vasquez did not

---

recommendation to remove Plaintiff, as opposed to any performance evaluation. Additionally, Plaintiff cites to a letter written by Wood, dated August 15, 2008. Pl.'s App. 8. The letter states that it "is to provide formal counseling on [Plaintiff's] behavior during the past three weeks." *Id*. The letter then listed some of the failings of Vasquez. *Id*. While this "formal counseling" letter was written on August 15, 2008, Vasquez, in his Complaint, states that he was issued a poor performance evaluation on July 10, 2008. The court is uncertain what document Plaintiff considers to be the performance evaluation. If Plaintiff is referring to the August 15, 2008 letter, Defendant had legitimate, nondiscriminatory reasons for sending that letter given Plaintiff's failures. If Plaintiff is referring to the performance plan, Defendant had legitimate nondiscriminatory reasons for drafting that as well. Finally, Plaintiff has provided no evidence that would create genuine dispute of material fact as to pretext.

[7] These forms are easily accessible online, and obtaining one would not require action on the part of a supervisor.

**Memorandum Opinion and Order - Page 14**

immediately report his workplace injury, although Mr. Vasquez had reported this injury just after returning from the emergency room after the injury occurred." *Id*.

The court determines that Plaintiff mischaracterizes the evidence.  Vasquez cites to an e-mail from Wood that states: "Have you handled a claim from someone that didn't report an accident when it was supposed to have happened - and then tried to file a claim after the fact?" Pl.'s App. 9.  First, Wood never used Plaintiff's name and simply posed the question as a hypothetical.  Second, Plaintiff states that he did report the injury later that evening via an e-mail to Wood.  Pl.'s App. 12. Therefore, Defendant, when stating that the individual did not report the accident when it was supposed to have happened, could have been referring to Plaintiff not saying anything during the meeting when the injury occurred.  Plaintiff also states that Wood reported having "huge amounts of additional info about discrepancies in Mr. Vasquez's statements, and his medical reports . . . ." Pl.'s App. 13.  The court fails to see how this applies to the alleged adverse employment action, as Plaintiff never explained how these statements are untruthful.  Accordingly, the court determines that the alleged lies committed by Wood do not constitute an adverse employment action.

Additionally, while the court is not aware of any evidence for these allegations, Plaintiff stated in his Complaint that Wood prevented him from leaving work to go to the emergency room, prevented him from restructuring his schedule around his medical treatment, and forced him to go on unpaid leave.  The court determines that Wood's "prevention" of Plaintiff from leaving to go to the emergency room and from restructuring his schedule does not constitute an adverse employment action.  Plaintiff could have certainly left whenever he desired; however, he would not have been paid.  Defendant clearly states that on August 18, 2008, Plaintiff was placed on "un-paid" leave

**Memorandum Opinion and Order - Page 15**

status versus AWOL.  Def.'s App. 215.  Wood explains that he spoke with the Human Resources

Office about Vasquez's current status.  Wood further states:

> Since you do not have any sick leave remaining, you will be allowed
> to transfer to unpaid leave status.  Your Emergency Room slip does
> not explain your injury, nor list[s] the work limitations that I
> requested.  You will be allowed to remain in this status for 72 hours
> (3 Days), to allow you sufficient time to obtain a Doctor's
> explanation of injury and limitations of work.  If you are not able to
> provide us that information we will change your status to AWOL.

*Id*.  In other words, Plaintiff had no sick leave remaining, and he was therefore not "forced" to go

on unpaid leave.  The court knows of no authority that *requires* an employer to pay an employee

when the employee has no remaining sick leave.  Moreover, Plaintiff produces no evidence that he

had remaining sick leave or could have used some other kind of leave.  Accordingly, the court

determines that these allegations from Plaintiff, even if true, do not constitute an adverse

employment action.  These eleven examples of conduct will not be considered by the court in its

discrimination analysis, as Plaintiff has not established a *prima facie* case with respect to these

claims; however, the court can consider these actions in its analysis of Plaintiff's hostile work

environment and constructive discharge claims.

The court will consider the following alleged acts as adverse employment actions: (1) Wood

prohibiting Plaintiff from communicating directly with the Mission Support Manager; (2) Wood

removing Plaintiff from the position as Team Lead of Region 7; (3) Wood prohibiting Plaintiff from

making onsite visits to Houston; (4) Wood denying Plaintiff's request to work from home; and (5)

Wood ordering Plaintiff to return his government issued cell phone, air card, and laptop.  All of these

actions arguably affect job duties, compensation, or benefits.

**Memorandum Opinion and Order - Page 16**

The court next examines whether Plaintiff was treated less favorably than other employees similarly situated who were not members of the protected class under nearly identical circumstances. Defendant argues that for most of Plaintiff's claims, he offers no evidence with respect to how other employees were treated.   Additionally, Defendant argues that where Plaintiff does provide such evidence, he fails to show how the other employees were treated more favorably.   According to Defendant, Plaintiff contended that Maryellen Brady, Cheri Kennedy, and Jennifer Price were allowed to telecommute, while he was not.   Defendant counters that no employees were allowed to telecommute; however, if employees had a doctor's appointment close to their homes in the middle of the day or mid-day flights, they could work from home for the remainder of the day.   Defendants further argue that there was no employee similarly situated to Vasquez because he was the only engineer in the office.

In his response, Plaintiff's contentions are conclusory.   He argues that "[i]n this case, it is clear from the record that Mr. Vasquez was treated less favorably than others."   Pl.'s Resp. 22. Further, he states:

> The record is completely devoid of any evidence of Mr. Wood calling other non-Hispanic, non-Salvadoran employees "wetbacks," removing them from leadership positions, orchestrating their terminations, injuring them in an apparent prank involving a broken chair, lying in order to undermine their workers' compensation claims, screaming at them, questioning their ability to do their jobs, or denying them site visits.

Resp. 18.   The court determines that Plaintiff has failed to adduce any evidence that he was treated less favorably because of his race or national origin than were other similarly situated employees who were not a member of the same race or of the same national origin, under nearly identical circumstances.   Plaintiff has not established that employees with similar responsibilities to him have

**Memorandum Opinion and Order - Page 17**

not (1) been removed from communicating with managers after being told that he was not supposed to have those communications; (2) been removed from leadership positions after being criticized for inappropriate actions; (3) been prevented from making onsite visits to Houston in similar type situations; (4) been denied the opportunity to work from home in a similar situation to Plaintiff; or (5) been asked to return the government-issued cell phone, air card, or laptop in a situation similar to Plaintiff's.  Furthermore, the court is unaware of any evidence demonstrating that any of the "similarly situated" employees had a similar history of prior performance issues.  Plaintiff failed to provide any evidence demonstrating that any fellow employees are similarly situated.  The court, however, discovered an interrogatory in Defendant's Appendix containing additional allegations from Plaintiff.  Neither party referred the court to this interrogatory.  Plaintiff states:

> Cheri Kennedy was allowed to stay home while in illness [sic] and I was not.  Jennifer [Price] and Maryellen [Brady] changed status from DHS/ICE contractor to federal employees without competition while I was demoded [sic] and given my position to Maryellen.  Walter Wies was allowed to charge for comp-time and/or overtime but I was not.  I was the only one that Mr. Wood scream[ed] [at] daily and call[ed] names for no apparent reason.

Def.'s App. 277.

The court, however, is unaware of any evidence demonstrating that these individuals were similarly situated to Vasquez.   Additionally, even though Defendant discussed the possibility of Harvey Lusk ("Lusk") replacing Plaintiff, there is no evidence that Lusk is similarly situated to Vasquez.  *See* Pl.'s App. 14.  Given that the court has no evidence related to any similarly-situated employee, the court cannot find that Vasquez was treated less favorably because of his race or national origin.

As Plaintiff has failed to establish a *prima facie* case, he creates no genuine dispute of material fact as to his race and national origin claims, and Johnson is entitled to judgment as a matter of law regarding these two claims.  Even assuming that Plaintiff has established a *prima facie* case of discrimination, these claims nevertheless fail because Johnson has set forth legitimate, nondiscriminatory reasons and Plaintiff fails to raise a genuine dispute of material fact regarding pretext.

### b.    Legitimate, Nondiscriminatory Reasons

Once Plaintiff has established a prima facie discrimination case, the burden shifts to Defendant to articulate legitimate, nondiscriminatory reasons for the adverse employment actions. The court determines that Defendant has met its burden by articulating a legitimate, nondiscriminatory reason for each of its five adverse employment actions.

### 1.    Communication with Manager and Removal from Team Lead Position

Defendant prohibited Vasquez from communicating directly with the manager and removed him from his position as team lead because: (1) Plaintiff contacted the manager without permission; (2) Plaintiff said that he did not intend to stay in Dallas and was looking for jobs in Houston; (3)

Plaintiff repeatedly failed to follow office policies; and (4) Plaintiff had a negative attitude.[8]  Def.'s

App. 163.

### 2.    Travel Request

Next, Defendant explains that he denied Plaintiff's request to travel to Houston because: (1)

Vasquez had already visited the relevant projects there; (2) he could hold meetings via phone or e-

mail just as the other project managers did; and (3) he needed to organize his files.  Wood explained

that Vasquez was a "supervisory team lead, so his place of duty was here in Dallas to train these new

people."  Def.'s App. 18.  Wood stated that Vasquez's travel to Houston became excessive and that

he needed to do most of his work by phone once he had seen the projects.  *Id.*  Wood also stated that

his boss, Ms. Wallace, directed him to have Vasquez quit traveling in every instance when he was

not absolutely needed to be there.  *Id.*

### 3.    Telecommuting

Wood denied Vasquez's request to stay at home and telecommute because: (1) Vasquez's

work performance was poor; and (2) no one in the office was allowed to telecommute.  Def.'s App.

76,  128, 157.  In his deposition, Wood stated that he needed Vasquez in the office because

Defendant was "starting up" the office in Dallas.  *Id.* at 76.  He also stated, "[W]e don't have a

---

[8] While Defendant did not single out reasons for prohibiting Plaintiff from communicating directly with the Mission Support Manager like it did with the other adverse employment actions, a legitimate, nondiscriminatory reason can be reasonably inferred by the court.  Defendant states: "Vasquez was removed from his position as a team lead because he contacted a manager without permission, said he did not intend to stay in Dallas and was looking for jobs in Houston, repeatedly failed to follow office policies, and had a negative attitude." Def.'s Br. 15; *see* Def.'s App. 163. The court determines that these are also the reasons that Defendant prohibited Plaintiff from communicating directly with the manager.  Defendant cites to page 163 of its Appendix, which is an e-mail from Wood stating, "Stop communicating with Darlene Davis right now!" and then follows with the reasons why he was removed from the position of team lead. Additionally, in his response, Plaintiff states, "Defendant's motion does not address the legitimate non-discriminatory reasons for Mr. Vasquez'[s] constructive discharge or Mr. Wood's attempts to undermine his workers' compensation claim, and therefore does not meet its burden of production."  Pl.'s Resp. 23.  Therefore, the only two adverse employment actions that Plaintiff contends Defendant has not discussed are (1) constructive discharge and (2) Wood's attempts to undermine the compensation claim.

telework option for this office, yet.  We're brand new."  *Id*.  Additionally, Patricia Wallis, one of

Plaintiff's supervisors and the past director of the Office of Asset Management, stated that Plaintiff

asked whether he could telecommute, and she responded by saying, "[A]t that point in time [she] just

did not have the ability to [allow employees to] telecommute."  *Id*. at 128.  She also noted that this

was the time at which Vasquez was already being reviewed for poor performance.  Wallis stated: "If

he has got poor performance, he is not getting telecommute . . . ."  *Id*.

### 4. Taking of Laptop and Equipment

Finally, Wood took Vasquez's laptop and other remote-access equipment because Plaintiff's

injury prevented him from traveling, and other employees needed the laptop.  Wood explained that

since Plaintiff could not physically carry a laptop, he (Wood) wanted to give it to employees with

active files.  *Id*. at 80.  Wood stated, "[W]hen they come back from their travel, you know, if, you

know, we're not needing it, [Vasquez] can use it."  *Id*.  Wood also explained that with new

employees, they were "scavenging and begging equipment left and right."  *Id*. at 82.  Additionally,

Wood states:

> I did order Mr. Vasquez to turn in his Laptop and Blackberry AFTER
> I obtained a work area for him on the first floor of this building and
> obtained a phone and desktop computer for him to use.  We had hired
> several new personnel and they needed to make site visits to their
> project sites.  Mr. Vasquez was unable to travel due to his injury.  His
> computer and blackberry were the only ones available for me to
> assign to our new employees to use for travel to site visits.

*Id*. at 222.

Defendant has met his burden of setting forth legitimate, nondiscriminatory reasons for each adverse employment action. Since Defendant met its burden, the case moves to the pretext stage.[9]

### c.       Pretext

The court now examines whether a rational fact finder could find that Defendant discriminated against Vasquez on the basis of race or national origin. Vasquez must offer sufficient evidence to create a genuine dispute of material fact that (1) Defendant's reason is not true but is instead a pretext for discrimination; or (2) that Defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is Vasquez's protected characteristic (his race or national origin). Plaintiff asserted nine instances that he contends constitute pretext. The court determines that he fails to show how these nine instances prove, or create a genuine dispute of material fact, that Defendant's reasons were pretextual or that Vasquez's race or national origin were motivating factors.[10] Therefore, even if he has established a *prima facie* case, Plaintiff fails to raise a genuine dispute of material fact as to whether Defendant's reasons were pretextual.

First, Plaintiff contends that Wood acknowledged that Vasquez was forced out of his position. Plaintiff cites to an e-mail sent by Wood in which he states: "Walt Weiss was the first of the five that quit due to Pat Wallis['s] pressure. (Jose R. Vasquez, Mike Thompson, Jason Smith, Steven Foti are the other four)." Pl.'s App. 21. This statement by Wood, however, does not indicate

---

[9] Vasquez contends that Defendant does not address "the legitimate non-discriminatory reasons for Mr. Vasquez's constructive discharge or Mr. Wood's attempts to undermine his workers' compensation claim, and therefore does not meet its burden of production." Pl.'s Resp. 18-19. The court determined, however, that the issues regarding the workers' compensation claim were not adverse employment actions as previously discussed. Additionally, the court will address the constructive discharge claim later.

[10] Even though Plaintiff did not mention the "wetbacks" or "Salvadorans are liars" comments in his examples of pretext, the court addresses them and determines that these stray remarks from Defendant are not enough to establish pretext.

any type of discrimination.   Additionally, Plaintiff provides no indication that any of the other

individuals mentioned were forced out because of a discriminatory motive.   The court determines

that this statement does not support the contention that Defendant discriminated against Vasquez on

the basis of race or national origin.   Plaintiff also seems to be concerned that if he did not resign,

Defendant would have fired him.   Vasquez cites to a statement made by Gibbs: "Mr. Vasquez called

me when I was at a funeral of a family member and advised me that he had an opportunity to go

work at another job, an FAA position, so I held his termination . . . .   So I gave Mr. Vasquez an

opportunity to go and land the other job and I held his termination."   Pl.'s App. 28.   Again, based

on this statement, the court fails to see any discriminatory motive or pretext for discrimination.   In

other words, the statement by Wood does not raise a genuine dispute of material fact that Vasquez

was intentionally discriminated against because of his race or national origin.   The logical inference

from this statement is that Gibbs saw no purpose in proceeding with a termination of Vasquez and

having the record negatively reflect that Vasquez was discharged if he would be leaving to take

another job.

Second, Plaintiff contends that Defendant did not follow its own termination procedures in

making the decision to fire him.   An employer's failure to follow its rules or procedure regarding

disciplinary action may constitute evidence of pretext.   *See Auguster v. Vermilion Parish Sch. Bd.*,

249 F.3d 400, 404 n.8 (5th Cir. 2001).   In this case, the court determines that this principle of law

is not applicable to Vasquez's situation.   Vasquez references a comment made by Wallis, the past

director of the Office of Asset Management, and argues that Defendant decided to terminate him

without following the procedure that Wallis outlined.   This contention by Plaintiff does not

demonstrate that Defendant's reasons were pretextual.   Defendant never terminated Plaintiff;

**Memorandum Opinion and Order - Page 23**

therefore, even if Defendant planned on terminating Vasquez, these procedures are not relevant. Further, there is no proof that Defendant did not follow these procedures.  Further, even if there were irregularities in an employment procedure, the court does not believe that the evidence amounts to a discriminatory motive or pretextual reason for an adverse employment action.  Defendant's alleged failure to follow its own termination procedures does not raise a genuine dispute of material fact that Vasquez was intentionally discriminated against because of his race or national origin.

Third, according to Plaintiff, Wallis stated that Wood "knows how to get someone fired and create a record to justify the termination."  Pl.'s Resp. 24.  Plaintiff cites to Wallis's deposition: "Scott [Wood] is retired Army and worked in the Inspector General's office, so he knows how to document the necessary documentations to fire . . . somebody."  Pl.'s Resp. 24; Pl.'s App. 91.  This is not sufficient evidence to establish that Defendant's reasons were pretextual.  That Wood may have known how to justify a termination, standing alone, is simply insufficient to show that he had a discriminatory motive.

Fourth, Plaintiff argues that Wood lied in his deposition about trying to help Vasquez keep his job.  Plaintiff cites to Wood's comment: "To tell you the truth, I was trying to save Rick's job and document things the way it was supposed to be."  Pl.'s App. 57.  Plaintiff points to an e-mail in which Wood discusses Vasquez and states: "I need your advice on how to release [Vasquez] from his position ASAP if possible."  Pl.'s App. 7.  Plaintiff also references an e-mail in which Wood discusses Vasquez's potential replacements.  The court agrees with Plaintiff that these statements appear contradictory: the juxtaposition between Wood discussing his salvation of Plaintiff's job and his attempt to seek release of Plaintiff.  The court, however, cannot reasonably infer a discriminatory

motive from Wood's actions and determines that these comments from Wood do not demonstrate that Defendant's reasons were pretextual.

Fifth, Plaintiff contends that Defendant does not seem to hold his employees accountable and, therefore, it is more likely that Wood could get away with discriminatory conduct. *See* Pl.'s Resp. 21. To prove this lack of accountability, Plaintiff cites to Wallis's deposition, in which she testified that she received approximately ten complaints regarding Wood. Pl.'s App. 94. She stated that these complaints were all verbal. *Id*. at 93. Wallis stated that if the complaint was not in writing, there was not much she could do about it unless the complaintant was making a hostile work environment claim and there were two witnesses. *Id*. at 101. Plaintiff also asserts that when asked about Wood's joking comment regarding Vasquez in an e-mail, Wallis stated that if she would have received the e-mail, she would have told Wood to be very careful about what he put in an e-mail. *Id*. at 21-22.[11] Wallis clearly states her policy when she investigates particular claims against employees: if it is not in writing, she will investigate if it alleges a hostile work environment and there are two witnesses. When Wallis stated that she received ten complaints about Wood, there was no discussion about whether these complaints were based on racial or national origin discrimination. Additionally, Willis's comment that she would have told Wood to be careful about what he writes in an e-mail (rather than reporting him) does not mean that she allowed discriminatory acts to occur freely. Wood's e-mail does not contain any evidence that he had discriminated against Vasquez based on his race or national origin. The e-mail criticizes or makes light of Vasquez's allegations or situation,

---

[11] The e-mail from Wood says the following: "I regret to inform you that I jumped for joy, tripped over my trash can, fell and hit my head on my desk, fell into the chair and hurt my back, my chair tipped over and may have injured my neck. I'll need you to submit my workman's comp paperwork for me. I'm heading home for 45 days of workman's comp continuation pay[.] I'll send you my medical documents via registered mail. Guido Mafioso and Slick Shyster were my witnesses. GO COWBOYS!" Pl.'s App. 19.

and it shows that Wood is a cad and needs some remedial training as a supervisor.  The court

continues to be amazed at the nonsense and lack of *savoir faire* that are reflected in e-mails.  While

the e-mail is in poor taste, stupid, and not a cause for approbation, it does not demonstrate that

Defendant's reasons were pretextual.  Plaintiff also contends that the Chief Financial Officer did not

take appropriate action when Wood reported some discriminatory comments Wallis made about

Wood's wife.  Plaintiff contends that the CFO's lack of action demonstrates that there is no

accountability in the DHS.  Even if the CFO did not properly respond to Wood's complaints, his

failure to respond is not evidence demonstrating that *Wood* discriminated against Plaintiff or that any

of Defendant's reasons were pretextual.

Sixth, Plaintiff provides a conclusory statement that "Mr. Wood intentionally caused Mr.

Vasquez['s] physical injury."  Pl.'s Resp. 22.  To prove this allegation, Plaintiff cites to a letter that

one of his doctors wrote him:

> You will see that I have made abundantly clear in your medical
> records that the cause of your ongoing problem is the work injury
> sustained on August 14, 2008.  I do not believe that the underlying
> cause of your pain is age related.  I believe that this is a direct result
> of the injury sustained when you fell from a faulty chair on August
> 14, 2008.

Pl.'s App. 1.  The evidence is far from clear whether Wood intentionally caused (or even caused, for

that matter) Plaintiff's injury.  The doctor simply states that the injury occurred due to the fall on

August 14, 2008.  The doctor does not comment on how the fall occurred or who was at fault.

Plaintiff also mentions Wood's e-mail, which the court previously discussed.  That Wood made light

of Vasquez's situation does not demonstrate that any of Defendant's reasons for committing any

alleged adverse employment action were pretextual.

**Memorandum Opinion and Order - Page 26**

Seventh, Plaintiff contends that "Mr. Wood maliciously mishandled Mr. Vasquez'[s] workers' compensation claim." Pl.'s Resp. 27. The court already addressed this allegation when it determined that Wood's actions related to Vasquez's workers' compensation claim were not adverse employment actions. Therefore, the court determines that any evidence related to Wood's alleged mishandling of Plaintiff's workers' compensation claim does not demonstrate that any of its previously provided reasons were pretextual.

Eighth, Plaintiff states that "these adverse actions were taken by Mr. Wood, and Mr. Wood's deposition testimony shows that he cannot be trusted." Pl.'s Resp. 23. While Plaintiff cites to "these adverse actions," he has not once specifically identified what these adverse actions are. Additionally, Plaintiff's statement is conclusory. He cites to a dialogue where Wood was asked, "And did you perceive [Ms. Kennedy's] skin color when you looked at her?" and Wood replies, "Women wear makeup." Pl.'s App. 40. While the court agrees that Wood failed to answer the question and his answer is flippant, it does not agree that this comment demonstrates that Wood cannot be trusted and that Defendant's previously provided reasons were pretextual. Moreover, that one perceives another's skin color or observes that someone is of a particular race or ethnicity standing alone, is not evidence of intentional discrimination. The court does not know what point is being made; however, it is fatuous to expect a person who looks at another person not to observe or take note of the person's race, ethnicity, or gender. This is something that occurs naturally, and it means nothing in the context of discrimination, unless evidence is produced that shows a discriminatory motive.

Finally, Plaintiff contends that Wood analogized Wallis's discrimination of Wood to Wood's discriminatory view of Vasquez. *See* Pl.'s Resp. 23. Wallis told Wood, "You're my Rick Vasquez." Wood stated that he was slandered because of that comment. Plaintiff argues that the

reason Wood felt like he was slandered is because Wallis seemed to imply the following: I am treating you just like you treated Vasquez. While Wood did not appreciate the statement made by Wallis, he explains it as referring to a person that Wallis thought had a poor work ethic, was dishonest, and thought to be of questionable moral and ethical character. Pl.'s App. 84. According to Wood, Wallis was comparing Vasquez's poor work ethic to Wood's poor work ethic. Wallis was not referring to Vasquez because of his race or national origin. Additionally, Wallis cannot speak for Wood, and the court has determined that based on the evidence, Wood did not discriminate against Vasquez on the basis of race or national origin.

For these reasons, the court determines that Defendant's articulated reasons are not pretext for intentional discrimination. Accordingly, no genuine dispute of material fact exists as to Plaintiff's claim of race and national origin discrimination, and Defendant is entitled to judgment as a matter of law as to these claims.

### B.      Hostile Work Environment Claim

Vasquez states that he experienced unwelcome harassment; that the harassment was based on race, color and national origin; and that the harassment was so severe or pervasive that it altered the conditions of his employment and created an abusive environment.

Ordinarily, to establish a *prima facie* case of harassment alleging a hostile work environment claim under Title VII, an employee must raise a genuine dispute of material fact or prove: (1) that he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on his protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th

Cir. 2002). In *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), the Supreme Court modified this test with respect to cases in which the alleged harasser is a supervisor with immediate or higher authority over the harassed employee. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353-54 (5th Cir. 2001) (citation omitted). In such cases, the employee need only meet the first four elements of the test. *See id.* Because the alleged harasser here (Wood) had authority over Vasquez, Vasquez need only satisfy the first four elements.

The fourth element of the test is met only if the harassment was "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Id.; Ramsey*, 286 F.3d at 268. If the conduct at issue was not severe or pervasive, the employer cannot be held vicariously liable for the supervisor's actions. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). If, however, the conduct was severe or pervasive, the employer may avail itself of the *Ellerth/Faragher* affirmative defense in an attempt to avoid liability. *Wyatt*, 297 F.3d at 409; *see Pfeil v. Intecom Telecomms.*, 90 F. Supp. 2d 742, 749 (N.D. Tex. 2000). This defense comprises two elements, both of which an employer must establish to avoid liability under Title VII: (1) the employer exercised reasonable care to prevent and correct promptly any racially harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any available preventive or corrective opportunities.[12] *Ellerth*, 524 U.S. at 765; *Wyatt*, 297 F.3d at 409.

The Supreme Court has "repeatedly made clear that although [Title VII] mentions specific employment decisions with immediate consequences, the scope of the prohibition is not limited to

---

[12] Defendant alludes to the availability of this defense to employers but does not argue that the defense applies in this case.

**Memorandum Opinion and Order - Page 29**

economic or tangible discrimination." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1986) (internal quotations omitted); *EEOC v. WC&M Enter., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "[I]t covers more than terms and conditions in the narrow contractual sense." *National R.R. Passenger Corp.*, 536 U.S. at 116 (quoting *Faragher*, 524 U.S. at 786) (internal quotations omitted). "The phrase 'terms, conditions, or privileges of employment' [of 42 U.S.C. § 2000e 2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *National R.R. Passenger Corp.*, 536 U.S. at 116 (quoting *Harris*, 510 U.S. at 21). Thus, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *WC&M Enter., Inc.*, 496 F.3d at 399 (quoting *Harris*, 510 U.S. at 21).

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. To determine whether an environment was objectively offensive, courts consider the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *WC & M Enters., Inc.*, 496 F.3d at 399. "Workplace conduct is not measured in isolation." *Ramsey*, 286 F.3d at 268 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)). For a hostile working environment to be deemed sufficiently hostile, all of the circumstances must be taken into

consideration. *Id.* "No single factor is determinative. In short, a showing that the employee's job performance suffered is simply a factor to be considered, not a prerequisite." *WC&M Enter., Inc.*, 496 F.3d at 399-400 (internal citation omitted). "[E]ven without regard to . . . tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." *Id.* (quoting *Harris*, 510 U.S. at 22).

Not all harassment in the workplace is actionable. The "mere utterance of an . . . epithet [that] engenders offensive feelings in a[n] employee[ ] does not sufficiently affect the conditions of employment." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (citation omitted). Likewise, "conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve [Title VII's] goal of equality." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). On the other hand, a single incident of harassment that is sufficiently severe or a "continuous pattern of much less severe incidents of harassment" may give rise to a viable Title VII claim for hostile work environment under the totality-of-the-circumstances test. *WC&M Enter., Inc.*, 496 F.3d at 400.

As this claim involves Vasquez's immediate supervisor, the court will focus on an analysis of the first four elements of this claim: (1) that Vasquez belongs to a protected class; (2) that he was subject to unwelcome harassment; (3) that the harassment complained of was based on his protected characteristic; and (4) that the harassment affected a term, condition, or privilege of employment. Plaintiff contends that tricking him into sitting in a broken chair and causing him serious and lasting injury are more than physically threatening and humiliating. Vasquez also emphasizes that all of the alleged harassment occurred within a six-month period. When arguing that Defendant is not entitled

to summary judgment on his hostile work environment claim, Plaintiff cites to a "few of the actions that were particularly severe." Pl.'s Resp. 28. Vasquez lists the following actions: (1) Wood physically injured Vasquez; (2) Wood sought to humiliate Wood because of this injury by portraying him as a "buffoon"; (3) Wood removed Vasquez from his team lead position; (4) Wood issued Plaintiff a "write-up"; (5) Wood convinced his superiors to fire Vasquez; and (6) Wood was forced out of his position before his termination was finalized.

The court determines that Plaintiff has not established, or raised a genuine dispute of material fact, that these six actions were based on Vasquez's race or national origin. The court also determines that these six incidents of alleged harassment, standing alone, are not sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment for Plaintiff. First, regarding the chair incident, the evidence does not establish that Wood actually caused Vasquez's injury. Even if he did cause this injury, there is insufficient evidence to show that it was motivated by discrimination, as opposed to ill-advised horseplay. Even if it was motivated by discrimination, it is not an act that would be sufficiently severe or pervasive so as to create an abusive working environment for Plaintiff. Second, the e-mail cited to by Plaintiff is one that makes light of Vasquez's injury and, combined with the first alleged act, does not create a sufficiently abusive working environment. Third, the court has previously discussed that Wood had a legitimate, nondiscriminatory reason for removing Vasquez from his team lead position. Fourth, that Wood provided Plaintiff with a "write-up," which discussed the matters on which he could improve, does not establish an abusive working environment, even combined with the other acts. Fifth, Vasquez was not fired; therefore, whether Wood convinced his superiors to fire Vasquez is quite beside the point. Even if Wood convinced his superiors to fire Vasquez, there is no evidence demonstrating

that Wood had a discriminatory intent.  Finally, even if Wood forced Vasquez out of his position, there is no evidence that any of Wood's actions were based on a discriminatory motive.  The evidence demonstrates that Plaintiff's performance was poor and caused Vasquez to be a focal point of his supervisors.[13]

While the court determined that Plaintiff's list of "particularly severe" actions alone was not enough to raise a genuine dispute of material fact as to Plaintiff's hostile work environment claim, the court must also consider the times when Wood called him a "wetback" and stated that "Salvadorans are liars."  In his Complaint, Plaintiff contends that he was called a "wetback" several times between April and September 2008; however, he only provides the exact date and situation for two name-calling incidents.  He states that on July 8, 2008, Wood said that "Salvadorans are liars."  Additionally, Plaintiff states that on July 10, 2008, Wood issued him a poor performance evaluation and, when he would not sign it, Wood called him a "wetback."  Towards the end of the list of allegations in his Complaint,  Plaintiff states that he complained to Wood's supervisor, Michael Gibbs, but that Gibbs failed to take any prompt remedial action.  Plaintiff never states, however, exactly when he spoke to Gibbs and what he told him.  As the court previously explained, the mere utterance of an epithet that engenders offensive feelings in an employee does not sufficiently affect the conditions of employment.  The term "wetback" is a comment related to Plaintiff's national origin, but these isolated remarks do not constitute pervasive harassment actionable under Title VII.  *See Harilall v. University Health Sys. Dev. Corp.*, 174 F.3d 197 at *4

---

[13] The court notes that the manager with whom Plaintiff was prevented from talking, Darlene Davis, states in an e-mail to Plaintiff: "I am sorry you are going through this, you have been a great help to OI."  Pl.'s App. 16.  This view, however, seems to be inconsistent with the statements made by Wood and Wallis.  Additionally, it is unclear whether Davis simply made this comment to avoid confrontation.  Moreover, although assessments or comments regarding a worker's performance are at times subjective, such assessments do not violate laws prohibiting discrimination, unless they show some element of discriminatory intent.

(5th Cir. Feb. 18, 1999).   "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."   *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (citation omitted).

Although the statements in the preceding paragraph are merely allegations of the Complaint, which is not verified and cannot be considered as competent summary judgment evidence, the court discovered additional information in Plaintiff's answers to Defendant's interrogatories.  Plaintiff did not point out this information to the court.  This is yet another example of the parties placing an unnecessary burden on the court by failing to cite to facts in the record that support either side's claim.  In the interrogatories, Plaintiff states that Wood called him a "wetback"[14] on five different occasions: (1) April 21, 2008; (2) May 29, 2008; (3) June 21, 2008; (4) July 10, 2008; and (5) August 8, 2008.  Def.'s App. 272.  Wood also told Plaintiff that "Salvadorans are liars" on July 8, 2008.  *Id.*  Given the number of times these racial comments were made in a short, five-month period, the court determines that these actions amount to more than simple teasing, offhand comments, and isolated incidents, and that a genuine dispute of material fact is established as to Plaintiff's hostile work environment claim.

A regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII.  *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (citing *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 1996)).  In *WC&M*, the plaintiff was "subjected to verbal harassment on a regular basis for a period of

---

[14] "Wetback" is an offensive term used to describe a Mexican who enters the United States illegally by swimming or wading across the Rio Grande River, which forms part of the border between the United States and Mexico.

approximately one year." *Id*.  He was constantly called "Taliban" and referred to as an "Arab."  Two

individuals also mocked his diet and prayer rituals.  *Id*.  Co-workers made comments to him about

September 11, 2001, suggesting that he was somehow involved in the terrorist attacks.  *Id*.  He was

also called a "Muslim extremist." *Id*.  Similarly, Vasquez was subjected to verbal harassment during

a five-month period.  Further, considering Defendant's statements, made by Plaintiff's immediate

supervisor with whom Plaintiff is in constant contact, in addition to other alleged incidents, the court

believes a genuine dispute of material fact exists as to whether the conduct of which Plaintiff

complains altered the terms, conditions, or privileges of Plaintiff's employment.  While Vasquez's

situation is not as severe as that of the plaintiff in *WC&M*, the court determines that there is enough

evidence to create a genuine dispute of material fact as to his hostile work environment claim and

that this claim should be determined by a jury.[15]

### C.  Constructive Discharge Claim

Plaintiff contends that DHS, through its discrimination and harassment, constructively

discharged him.[16]  To establish a constructive discharge claim, an employee "must offer evidence

---

[15] Defendant cites *Harilall v. University Health System Development Corporation*, an unreported 1999 Fifth Circuit case, which states that "[w]hile 'wetback' and 'illegal alien' are comments related to [the plaintiff]'s national origin, these isolated remarks do not constitute pervasive harassment actionable under Title VII."  174 F.3d 197, at *4 (5th Cir. 1999).  The plaintiff in *Harilall*, however, was only called a "wetback" and an "illegal alien" once.  Vasquez, on the other hand, was called a "wetback" on at least five occasions.

[16] Defendant also cites an unreported 2011 Fifth Circuit case, where the court reversed a grant of summary judgment on an employee's hostile work environment claim when the supervisor called the employee a wetback.  *See Carrera v. Commercial Coating Servs. Intern., Ltd.*, 422 F. App'x 334 (5th Cir. 2011).  Defendant attempts to distinguish this case by stating that some of the incidents of racial harassment in *Carrera* were "uncontroverted" and that the plaintiff reported the alleged harassment to supervisors three times with no result.  The court, however, deems Vasquez's testimony as true when reviewing Defendant's Motion for Summary Judgment; therefore, whether the incidents of racial harrassment are "uncontroverted" is quite beside the point.  Additionally, Plaintiff states that he did report his concerns to Gibbs, but no action was taken.

[16] The court notes again that Plaintiff does not plead a constructive discharge claim in his Complaint; however, the court notes that a constructive discharge was implied in his discussion regarding a hostile work environment and will address the constructive discharge claim.

**Memorandum Opinion and Order - Page 35**

that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008) (citation omitted).   Plaintiff resigned in September 2008; however, to prove constructive discharge, Plaintiff "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment. *Id.* (citation omitted).  Given that it has determined that a genuine dispute of material fact exists as to Plaintiff's hostile work environment claim, and in light of other conduct by Defendant's employees, the court concludes that a genuine dispute of material exists as to whether a reasonable person would feel compelled to resign because working conditions have become so intolerable.  Therefore, given that a genuine dispute of material fact exists as to Plaintiff's constructive discharge claim, Defendant is not entitled to judgment as a matter of law on this claim.

## V.    Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists as to Plaintiff's claims for race and national origin discrimination under Title VII.  Defendant is therefore entitled to judgment as a matter of law on these claims.   Additionally, the court **determines** that a genuine dispute of material fact exists as to Plaintiff's claims for hostile work environment and constructive discharge.  Accordingly, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment to the extent herein stated.

**It is so ordered** this 30th day of May, 2014.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 36**